IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **JASON SMITH**<br>19515 Portsmouth Dr.<br>Hagerstown MD 21742<br>   *On his behalf and on behalf of*<br>   *similarly situated persons*<br><br>   Named Plaintiff,<br><br>v.<br><br>**CENTURY CDJR, INC.**<br>402 Century Drive<br>Mount Airy MD 21771<br>Serve On:<br>  Joseph P. DeGiorgi<br>  302 Century Drive, PO Box 200,<br>  Mt. Airy, MD 21771 | Case No: _____<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Jason Smith ("Smith"), by and through undersigned counsel, Ingmar Goldson, Esq. and The Goldson Law Office, files this Class Action Complaint against Defendant, Century CDJR, Inc. ("Century"), and in support hereof states as follows:

### INTRODUCTION

Smith brings this action in pursuit of redress for a clear violation of Maryland and Federal laws, namely the Maryland Consumer Protection Act and the Equal Credit Opportunity Act. Smith tried to get the advertised 0% interest rate on financing the purchase of a new pickup truck, advertised by Defendant and Chrysler Capital, the manufacturer's finance company. Rather than honor the promotion in good faith, the Defendant pulled one of Smith's credit reports and told him that he did not qualify for the 0% promotion because of bad credit. Smith was skeptical of the Defendant's credit denial and learned that the Defendant lied to him: Defendant never submitted his application to Chrysler Capital. Smith did not have the benefit of receiving an adverse action letter from the dealership, though adverse action letters are required

1

pursuant to the ECOA and the FCRA when the dealership attempts to arrange financing, as it claimed to do for Smith.

## PARTIES

1. Plaintiff Jason Smith is a natural person residing in Washington County, Maryland, and is a "consumer" within the meaning of the Maryland Consumer Protection Act.

2. Defendant Century CDJR, Inc. is a Maryland corporation, licensed to do business in the State of Maryland, with its principal place of business in Mount Airy, MD.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter because the operative events in this Complaint took place in Frederick County, the Defendant regularly transacts business in Maryland, and the Defendant has availed themselves of the jurisdiction of this Court.

## BACKGROUND – THE EQUAL CREDIT OPPORTUNITY ACT

4. The Equal Credit Opportunity Act ("ECOA") prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction...on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1).

5. ECOA applies to any "creditor", defined as a "person who regularly extends, renews, or continues credit; any person who regularly arranges for the extensions, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

6. It is part of the statutory scheme that credit applicants receive notice when they are denied, or receive less favorable terms, for credit. An applicant "against whom adverse action is taken shall be entitled to a statement of reasons for such an action from the creditor." 15 U.S.C. § 1691(d)(2).

7. An "adverse action" is "a denial or revocation of credit, a change in the terms of credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the

terms requested." 15 U.S.C. § 1691(d).

8. Adverse actions notices must be sent "within thirty days . . . after receipt of a completed application for credit". 15 U.S.C. § 1691(d)(1).

9. ECOA has "the twin goals of consumer protection and education" *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 146 (4th Cir. 1983). The notice provision of ECOA were added in 1976. Pub. L. No. 94-239 (1976). Congress noted that the notice requirement

> fulfills a broader need: rejected credit applicants will not be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefits. . . in those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S. Rep. No. 94-589, 94th Congress.

10. A claim for failure to send an adequate adverse action notice, therefore, vindicates the right, granted by Congress, to know why the application was denied.

## STATEMENTS OF FACT

11. Plaintiff went to the Defendant's dealership on May 2, 2020 to shop for a pickup truck and take advantage of a 0% interest promotion that the dealership and Chrysler Capital were running at the time.

12. A salesman named Noah initially helped Smith with the vehicle selection and financing; Noah offered a deal where Smith would pay $700 per month for 84 months. Smith agreed to proceed with that deal.

13. Century pulled Smith's Equifax credit report on May 2, 2020, and upon information and belief, two credit accounts improperly appeared on the report that damaged Smith's credit report. Soon after Century pulled the report, Smith resolved those accounts that were erroneously appearing on his credit report. At the time of the filing of this Complaint, the accounts no longer appear on Smith's credit report.

3

14. Century employee in the finance department named Matthew told Smith that he did not qualify for the 0% promotion because of his damaged credit. Smith then immediately told Century that those two accounts were not supposed to be on his Equifax credit report, and Smith presented his Experian and TransUnion credit reports to Matthew. Neither the Experian nor TransUnion credit reports showed the two derogatory accounts.

15. Matthew told Smith that the creditor would **only** look at the Equifax credit report, and that the other credit reports did not matter.

16. Growing suspicious, Smith contacted Chrysler Capital. Chrysler Capital told him that they do not solely look at the Equifax credit report,.

17. Smith contacted Century and asked for an explanation. Century confirmed that it never submitted his credit application to Chrysler Capital, despite the fact that a Century employee told Smith that his credit application had been denied.

18. After denying Smith's credit application for the 0% deal that would have resulted in him paying roughly $700 per month, Century made Smith more offers that would have resulted in Smith paying substantially more money if he had accepted any of those offers. Smith declined subsequent offers by Century.

19. Days after learning that Century was being dishonest with him, Smith attempted to take advantage of the 0% interest deal at a different Chrysler dealership. When Smith approached a different dealership, he learned that the 0% interest for 84 months promotion had expired.

20. Smith thus suffered damage; in that he could not obtain financing at the favorable rate contained in the promotion. This damage was caused by Century's actions: had Century told him that they simply refused to submit his application to Chrysler Capital, Smith could have immediately gone to a different dealership and obtained financing there.

## PROPOSED CLASS

21. Pursuant to Fed. R. Civ. P. 23, proposed class is defined as below:

All persons who, within the five (5) years preceding the filing of this lawsuit:

1) attempted to purchase or purchased a car from Century,
2) completed an application for credit during the transaction,

<u>3)</u>  did not receive an offer of credit in the amount or on the terms requested in the application, and

<u>4)</u>  did not receive an adverse action notice from Century.

The class is restricted to those individuals whose initial retail installment sales contracts were cancelled within the three (3) years preceding the filing of this class action complaint.

## CLASS REPRESENTATION ALLEGATIONS

### Statement of Maintainable Class Claims

22. Pursuant Fed. R. Civ. P. 23, this case is maintainable on a class-wide basis pursuant to Fed. R. Civ. P. 23(b)(1),(2) and (3), and the Class Representative brings this action on behalf of himself and a class of all other persons similarly situated, to remedy the ongoing unfair, unlawful and/or deceptive practices alleged herein, and seeks damages on behalf of all those persons who have been harmed thereby.

### Identification of Common Questions of Law or Fact

23. Pursuant to Pursuant to Fed. R. Civ. P. 23(a)(2), there are questions of law and fact common to the Class, which common issues predominate over any issues involving individual class members.

24. The legal questions common to the Class Representative and to each class member are:

a)    Whether the defendant is required to send an adverse action notices;

b)    When the defendant is required to send adverse action notices to its customers;

c)    Whether Defendant's conduct violated ECOA and its implementing regulations;

d)    Whether the class members are entitled to punitive damages under the Equal Credit Opportunity Act and in what amount.

25. The factual questions common to the Class Representative and to each class member are:

a)    Whether the defendant sends adverse action notices to its customers and class members

b)    When the defendant sends adverse action notices to its customers

### Allegations of Typicality

5

26. Pursuant to Fed. R. Civ. P. 23(a)(2), the Class Representative's claims are typical of those of the class he seeks to represent because he completed, through the Defendant, a form credit application that upon information and belief, other members of the class also completed. Upon information and belief, the Defendant's policy is to avoid sending adverse action notices to its customers, therefore, the Plaintiff believes that he is a victim of the pattern and practice of the Defendant's violative conduct. As such, the claims of the Class Representative are identical to those of the class members.

### Allegations of Numerosity

27. Upon information and belief, the members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class is comprised of at least one hundred individuals. Fed. R. Civ. P. 23(a)(1). This believe is based on the Defendant's website which states that it currently has 80 new and 43 used vehicles available for sale.

### Adequacy of Class Representatives

28. Pursuant to Fed. R. Civ. P. 23(a)(4), the Class Representative will fairly and adequately protect and represent the interests of each class member. The Class Representative has no conflict of interest which would interfere with his ability to represent the interests of each class member.

29. The class representative has retained counsel with experience handling consumer claims, and consumer class action claims.

### Appropriateness of Class Treatment under Fed. R. Civ. P. 23(b)

30. A class action is superior to other methods for fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek appropriate damages individually. The prosecution of separate actions by the individual class members, even if possible, would create a

6

risk of inconsistent or varying adjudications with respect to the individual class members against Century.

31. The Class Representatives are represented by counsel competent and experienced in consumer protection litigation.

32. Members of the proposed class who have an interest in individually controlling the prosecution of separate claims against Century will not be prejudiced by this action. Each member of the proposed class will be identified through discovery and will be notified and given an opportunity to opt out of their respective class.

33. The Class Representatives do not presently know the nature and extent of any pending litigation to which a member of the proposed class is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representative will identify any such pending litigation through discovery from the Defendant.

34. This Court is an appropriate forum for the present action in that the Class Representatives are, and at all times herein mentioned have been, residents of Maryland; the Class Representatives' vehicle was purchased in Frederick County, and Century is located in Frederick County.

35. Certification of a class under Fed. R. Civ. P. 23(b) is appropriate as the questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

36. The Class Representative requests certification of a class for monetary damages under Fed. R. Civ. P. 23(c) that include damages for violation of ECOA.

37. There are no difficulties likely to be encountered by the Court in management of this proposed class action.

38. The Class Representative's counsel is entitled to a reasonable fee from the class members, from a common fund for the handling of this action, or from an order directing the Defendant to pay attorney's fees.

**COUNT I – Violation of the Equal Credit Opportunity Act ("ECOA") – 15 U.S.C. § 1691, et seq.**

**Alleged Individually and on Behalf of All Class Members**

39. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

40. Named Plaintiff asserts this claim on behalf of himself and the Class against Century.

41. The ECOA prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction...on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1). The ECOA also contains notice requirements for creditors, providing that an applicant for credit "against whom adverse action is taken shall be entitled to a statement of reasons for such an action from the creditor." 15 U.S.C. § 1691(d)(2). A "creditor" is a "person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). An "adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d). An "aggrieved applicant" may bring a civil action against "[a]ny creditor who fails to comply with any requirement imposed under [the Act]."

42. Named plaintiff and putative class members are persons as defined in 15 U.S.C. § 1691a(f).

43. The Dealership is a "creditor" as defined in 15 U.S.C. § 1691a(e) because the dealership regularly arranges for the extension of credit, regularly participates in a credit

8

decision, refers consumers to other creditors, decides which creditors to refer consumers to, and often determines if and when it will rescind the credit terms that it offers to consumers.

44. Upon information and belief, the dealership also determines, at least in part, the interest rate and other credit terms ultimately offered in credit transactions, by including "dealer participation" interest in the rates that it offers to its customers.

45. The Plaintiff submitted a credit application to the Defendant relating to his purchase of the vehicle.

46. The Defendant was required under ECOA to take action on Plaintiff's credit application within 30 days.

47. The Defendant informed Plaintiff that his credit application for the purchase of the pickup truck had been declined on May 2, 2020.

48. On May 2nd and the days after, the Defendant made several counteroffers to the Plaintiff, none of which were accepted.

49. The defendant made hard pulls of the Plaintiff's credit on May 2nd and May 4th.

50. Following its denial of credit and offering more expensive credit terms that the Plaintiff rejected, Defendant failed to provide the written notice of adverse action in violation of 15 U.S.C. § 1691(d)(2).

51. As a result of Century's failure to provide the Plaintiff an adverse action notice, the Plaintiff was in a more difficult bargaining position when he decided to seek credit elsewhere.

52. Smith and the putative class members were harmed by Century's failure to provide notice because the failure denied each class member information that is critical to determine if they were denied credit for a legitimate or acceptable reason. Further, the class members were harmed because Century violated the class' statutory right to be informed of the adverse action and reasons supporting the adverse action.

53. Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a), except that in the case of a class action the total recovery under this subsection shall not exceed the lesser of $500,000 or 1 per centum of the net worth of the creditor. In determining the amount of such damages in any action, the court shall

9

consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. 15 U.S.C.A. § 1691e (b).

WHEREFORE, Jason Smith, on behalf of himself and all others similarly situated, requests:

A) An order certifying the Class and appointing Plaintiff as the representative of the Class, and appointing undersigned counsel as Class Counsel;
B) An award to Plaintiff and each of the members of the Class for an amount including punitive damages pursuant to ECOA;
C) An award for pre-judgment and post-judgment interest to the extent permitted by law;
D) An award for attorney's fees, costs and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law;
E) For all remedies available to the Class and Class Representatives under Maryland law including punitive damages;
F) For other and further relief as the Court may deem proper.

**COUNT II – Violation of the Maryland Consumer Protection Act - Md. Code Ann., Comm. Law §§ 13-101 et. seq. ("MCPA")**
**Alleged Individually only**

54. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

55. Maryland legislature enacted the MCPA in response to a "mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit." The practices of Century are the type of practices that the MCPA was passed to prevent, and for which the MCPA gives consumers an avenue of redress.

56. Pursuant to the MCPA, unfair and deceptive trade practices include the failure to state a material fact if the failure deceives or tends to deceive. *MCPA § 13-301(3).*

57. When Century took the Plaintiff's credit application and told him that he did not qualify for the 0% interest promotion, Century engaged in unfair or deceptive trade practices described in MCPA § 13-301(1), (3). Century misrepresented to the Plaintiff the results of his credit application, and Century also misrepresented to the plaintiff certain other facts, fir instance, that Chrysler Capital will only look at one credit report when making credit offer decisions. Century also made material omissions that tend to deceive, including when Century failed to tell the Plaintiff that it had not submitted his application to Chrysler Capital until the 0% for 84 month promotion expired.

58. The Plaintiff reasonably relied on Century's aforementioned misrepresentations and omissions. After being lied to about Century's and Chrysler Capital's actions on his completed credit application, the Plaintiff missed out on an opportunity to take advantage of the same or similar 0% interest promotion elsewhere.

59. Pursuant to the MCPA, unfair and deceptive trade practices are violations of the MCPA.

60. Pursuant to the MCPA, a person injured by a violation of the MCPA may bring an action to recover for injuries or loss sustained as well as reasonable attorney's fees.

61. The Plaintiff is entitled to damages that include actual damages including damages for emotional distress.

WHEREFORE, Jason Smith requests:

A) An award of actual damages to be determined by a jury;
B) An award for pre-judgment and post-judgment interest to the extent permitted by law;
C) An award for attorney's fees, costs and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law;
D) For other and further relief as the Court may deem proper.

Respectfully Submitted,

  /s/ Ingmar Goldson
Ingmar Goldson, Esq.
The Goldson Law Office
8737 Colesville Rd., Suite 308
Silver Spring, MD 20910
Phone: 240-780-8829
igoldson@goldsonlawoffice.com

Emanwel J. Turnbull
Fed. Bar No. 19674
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21401
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

Attorneys for Plaintiff Jason Smith
Proposed Class Counsel

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable

  /s/ Ingmar Goldson
Ingmar Goldson, Esq.